**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SALAM MAKLAD,<br><br>               Petitioner,<br><br>v.<br><br>RON MURRAY, Warden, Mesa Verde ICE processing center, et al.,<br><br>               Respondents. | Case No. 1:25-cv-00946 JLT SAB<br><br>ORDER DENYING MOTION FOR CLARIFICATION (Doc. 28) |

## I.   BACKGROUND

Salam Maklad is a former immigration detainee who was arrested on July 9, 2025 at a scheduled in-person check-in with ICE. (Doc. 13 at 2.) On August 8, 2025, the Court issued an order ("PI Order") finding that Petitioner is likely to succeed on the merits of her habeas claim that her re-detention without a pre-deprivation hearing violated her rights under the Due Process Clause of the Fifth Amendment. (*See* Doc. 13 at 10–15.)[1] The Court ordered Respondents to immediately release Petitioner. (Doc. 13 at 16.) The Court also permanently enjoined and restrained Respondents from "re-arresting or re-detaining Ms. Maklad absent compliance with constitutional protections, which include at a minimum, pre-deprivation notice—describing the

---

[1] Upon the agreement of the parties, the Court converted Petitioner's motion for a temporary restraining order into one for a preliminary injunction. (Doc. 13 at n.1.)

change of circumstances necessitating her arrest—and detention, and a timely bond hearing." (*Id*.)

Petitioner alleges that, instead of reinstituting the *status quo* before the July 2025 arrest, Respondents imposed additional requirements following her release, such as requiring her to attend more frequent in-person check-ins with ICE and requiring her to apply for a Syrian passport. (Doc. 28-1 at 2.) Consequently, Petitioner filed the instant motion seeking clarifications on the scope of the PI Order, contending that it should be interpreted to prohibit Respondents from imposing additional restrictions or conditions on her beyond what existed before her arrest in July 2025. (*Id*. at 3.) In response, Respondents argue, *inter alia*, that the PI Order imposed no such prohibition; and that, even if the Court did so, Respondents have not imposed any "new" conditions or requirements on Petitioner. (*See generally* Doc. 32 at 4–8.)

## II.   LEGAL STANDARD

An order imposing a preliminary injunction must "state its terms specifically," and "describe in detail . . . the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1). To ensure compliance with this rule, this Court "has discretion to clarify or modify the scope of an injunction." *Safari Club Int'l v. Bonta*, 756 F. Supp. 3d 837, 840 (E.D. Cal. 2024) (citing *Smagin v. Yegiazaryan*, No. 2:14-cv-09764-RGK-PLA, 2020 WL 1652347, at *3 (C.D. Cal. Apr. 1, 2020); and *Sacramento Homeless Union v. Cnty. of Sacramento*, 617 F. Supp. 3d 1179, 1199 (E.D. Cal. 2022)); *see also Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003) (explaining that if a party complains that an injunction is vague and ambiguous, "the proper approach would be for [that party] to seek a modification or clarification of the injunction from the district court"). "[C]larification may be obtained on motion by a party or made on the court's own motion." *Smagin*, 2020 WL 1652347, at *3.

## III.   ANALYSIS

The Court begins by noting that the PI Order explicitly explained that a prohibitory injunction is intended to preserve the *status quo* until a decision on the merits, and that the *status quo* in this case is "the status before Ms. Maklad was arrested and was still on parole." (Doc. 13 at 11.) This discussion would have been surplusage if the Court did not intend to restore Plaintiff

to the *status quo ante*. The Court recognizes that it could have explicitly stated this intention in the "Orders" section at the end of the PI Order—and the Court so clarifies.

### A.    Applying for a Passport

The Court agrees with Respondents that the conditions of Petitioner's release—prior to the July 2025 arrest—required Petitioner to assist ICE in obtaining any necessary travel documents, which may include a passport. (Doc. 32 at 7; *see also* Doc. 28-1 at 3–4 & n.4 (acknowledging the same).) Petitioner has offered no substantial basis, in case law or administrative guidance, supporting her position that the word "necessary" means that said obligation is triggered only when there is a final removal order. (*See* Doc. 33 at 5.)

That said, Respondents' exhibits do not show any requirement that Petitioner must be in actual possession of a presently valid travel document. Rather, those exhibits confirm that Petitioner is merely required to ***assist*** ICE in obtaining travel documents and/or is merely required to make the necessary ***requests*** to the appropriate embassy or consulate. (Doc. 32-1 at 6 ("You must assist [ICE] in obtaining any necessary travel documents."), 8 ("provide ICE with written copies of requests to Embassies or Consulates"), 11 (identical).) And the repeated references to "Embassies or Consulates" suggests that Petitioner need not attempt to directly reach out to the government in Damascus.[2]

The Court has also considered the parties' dispute over whether Petitioner has—or is eligible to apply for—Venezuelan citizenship, such that she may be able to apply for a Venezuelan passport. (*See* Doc. 33 at 6; Doc. 32 at 8 n.9.) The Court finds that there is insufficient information to decide that question in favor of Petitioner. Regardless, if the Federal Government has a colorable basis for believing that Petitioner is eligible, the Court struggles to see why the Federal Government cannot compel her *to at least try* to request Venezuela citizenship/passport. Petitioner advanced no basis to categorically bar the Government from doing

---

[2] Given the complexity of the diplomatic relationship with Syria, the Court expresses no opinion as to where—and how—Petitioner should file a request for a new and internationally recognized Syrian passport, or if it is even possible to do so. The Court merely uses Damascus for illustrative purposes.

so.[3] In short, Petitioner may be required to "assist" ICE by filing a specific request with a specific embassy or consulate within the United States, so long as ICE's directive is not utterly impossible.

### B.    More Frequent Check-ins

As the party seeking clarifications on the PI Order and the enforcement thereof, Petitioner bears the burden of establishing the frequency of check-in appointments in the months leading up to her arrest in July 2025. The frequency of check-in appointments 2022, 2023, or 2024 is of no consequence, for the relevant question here is the frequency of check-ins in March or April of 2025 and versus the frequency in 2026. On this question, Petitioner contends that it was once per year, (*see* Doc. 28-1 at 9; Doc. 33 at 6), whereas Respondents appear to argue that it was once every three or four months, (*see* Doc. 32 at 6; Doc. 28-2 at ¶ 8 (stating that ICE told her during the April 2025 check in that she had to return in July 2025)).

It is not clear to the Court what the frequency of check-ins was just before her arrest in July 2025. It seems that, as of April 2025, ICE had decided that Petitioner must check in once every three months instead of once a year. (*See* Doc. 32-1 at 7.) In response to this, Petitioner argues that this increase in frequency was "ostensibly to effectuate her re-arrest." (Doc. 33 at 6.) That may be one possible explanation, but it is not enough for Petitioner to prevail on the facts. Petitioner must present more hard evidence and explanation—beyond speculating Respondents' motive or purpose for ordering the July 2025 check in with ICE.

In short, Petitioner has provided insufficient evidence as to the frequency of check-ins immediately prior to her July 2025 arrest for the Court to rule in Petitioner's favor on the issue.

///

///

///

---

[3] Petitioner's subjective belief that she "will establish at a hearing in her asylum case that she has never held Venezuelan citizenship[,]" (Doc. 33 at 6 n.4), is not directly pertinent to the question of whether the Federal Government has a reasonable basis for believing that she has held—or is eligible to apply for—Venezuelan citizenship. Whether Petitioner, like her husband, has a well-founded fear of persecution in Venezuela, (*id.*), is a similarly distinct question from whether she might be able to apply for a Venezuela passport.

## IV.   Conclusion

Based upon the foregoing, Petitioner's Motion for Clarification, (Doc. 28), is **DENIED**.

IT IS SO ORDERED.

Dated:   **May 29, 2026**

_____
UNITED STATES DISTRICT JUDGE